**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 2:22-cr-117(6) |
| TYLER BOURDO, | : | JUDGE SARGUS |
| Defendant. | : | |

---

**SENTENCING MEMORANDUM OF DEFENDANT TYLER BOURDO**

---

## I.      INTRODUCTION

Defendant Tyler Bourdo is before the Court for sentencing following his guilty plea to a three count Superseding Information, charging him with Conspiracy to Distribute and Possess with Intent to Distribute controlled substances including 400 grams or more of fentanyl, 28 grams or more of cocaine base; 40 grams or more of fentanyl; 5 kilograms or more of cocaine, and 280 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii), (b)(1)(A)(iii), and (b)(1)(A)(vi); distribution of fentanyl and cocaine base resulting in a death from using those controlled substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. §2; and conspiracy to engage in a commercial sex act in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1) and 18 U.S.C. §1594 (c). The guilty plea is part of the parties' binding plea agreement pursuant to Rule 11(c)(1)(C) that includes a stipulated term of incarceration that allows the parties to request a sentence between 240 to 300 months. Defendant is requesting a sentence at the bottom of this range.

The probation officer calculated the Sentencing Guideline range based on a total offense level of 43 and criminal history category III, resulting in a sky-high Guideline range of life. Defendant has one outstanding objection to the PSR relating to acceptance of responsibility. The Government joined in the objection. All other objections have been resolved or withdrawn.

Defendant also moves for a downward departure pursuant to U.S.S.G. §5H1.3 for his diagnosis of chronic Post-Traumatic Stress Disorder (PTSD) and major depressive disorder, created in part by enduring over a decade of cruel and extraordinary childhood trauma and exposure to violence.  He is also requesting a departure under §5G1.3(b), due to having served a term of imprisonment for an offense that is relevant conduct.

## II.    SENTENCING FRAMEWORK

The Court is tasked with imposing "a sentence sufficient, but not greater than necessary," to vindicate Congress' sentencing mandate, set forth in 18 U.S.C. § 3553(a)(2). While the guideline calculation process is a critical component of the sentencing analysis, the guideline range is only "the starting point and the initial benchmark." *Gall v. United States,* 128 S.Ct. 586, at 596. The Court "may not presume that the Guideline range is reasonable." *Id.* at 596-97. A sentencing court is "free to make its own reasonable application of the 18 U.S.C. § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring). "[E]xtraordinary circumstances [are not required] to justify a sentence outside of the Guidelines range." *Gall* at 595.

## III.   SENTENCING GUIDELINES

**OBJECTION NO.1 :** As explained above, the probation officer's guideline calculation resulted in a total offense level of 43. Defendant's only remaining objection relates to withholding

acceptance of responsibility because of the finding that Defendant attempted to obstruct justice and was assessed a two-point enhancement under §3C1.1. In support of withholding acceptance, the probation officer cites Application Note #4, §3C1.1, stating that "obstruction ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§3E1.1 and 3C1.1 may apply." The parties jointly object to this conclusion and agree that Defendant should receive the benefit of acceptance of responsibility under §3E1.1. Defendant further submits that he can establish that his case was extraordinary so as to entitle him to the downward adjustment for acceptance of responsibility.

The obstructive conduct at issue took place in October 2021, long before Defendant was arrested for the instant offense on June 29, 2022. In addition, nearly one year ago, long before this matter went to trial for the remaining codefendants, Defendant demonstrated acceptance of responsibility and signed a comprehensive plea agreement. The plea agreement included the requirement that Defendant acknowledge seven harrowing pages of descriptive and damming misconduct. Following his decision to enter into this agreement, he never once requested to withdraw his plea. Given Defendant's early decision to enter into an agreement that requires a stipulated sentence of at least two decades and the extraordinary resources that went into taking this complex case to trial, the acceptance of responsibility reduction should apply.

**REQUEST FOR DEPARTURE NO. 1:**

Defendant submits that a departure under §5H1.3 is warranted due to his diagnosis for posttraumatic stress disorder and major depressive disorder. The psychological evaluation prepared by neuropsychologist Dr. Ryen Mekota confirms that Defendant's chronic psychiatric

3

problems have interfered with his ability to regulate his behaviors. In addition, even with treatment and medication, Defendant continues to endorse moderate to severe mental health problems. While the PSR details several instances and assesses corresponding enhancements due to Defendant's engagement in violent conduct as part of his role in the conspiracy, the enhancements should be tempered against the fact that the violent conduct is largely attributable to Defendant's mental health challenges and inability to regulate his emotions.

**REQUEST FOR DEPARTURE NO. 2:**

Paragraph 143 of the PSR details a 2018 conviction for possession of cocaine and heroin and tampering with evidence that resulted in a 24-month sentence. The probation officer concluded that the sentence was not countable because it was considered relevant conduct. Under §5G1.3(b)(2), if the sentence was not completed, the provision instructs the court to adjust the sentence for any period of imprisonment already served if it determines that the term of imprisonment will not be credited by the BOP. However, because Defendant already completed the 24-month sentence, he will not receive any credit for the time served for this relevant conduct. Defendant submits that even though he completed the sentence, he should still receive an adjustment consistent with this provision. Pursuant to Application Note 5, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Defendant satisfies both of these requirements and should therefore receive a sentence adjustment.

4

## IV.     §3553(a) FACTORS

### a.  Nature and Circumstances of the Offense

The Statement of Facts in the plea agreement and the PSR provide in significant detail the nature and circumstances of the offense. Tyler has never shied away from the fact that, for many years, he was a drug trafficker. From his point of view, selling drugs was all he knew how to do and it was the only way he could ensure stability, acceptance and a sense of family. Although the Government understandably views him as dangerous and responsible for creating an environment of fear, Tyler viewed his role in the conspiracy as one of a loyal family member and protector, and used the only tools he knew for coping with conflict.

The scenarios described in the PSR describing assaults on others involved circumstances where the victims, after Tyler gave them a place to stay or an opportunity to make money, repeatedly stole money or drugs from Tyler or his superiors in the conspiracy. Tyler treated these victims in the same way he would have been treated as a child, had he done the same thing. Again, his response was the same response he learned from his upbringing. Tyler did not view his conduct as cruel or outrageous and did not see his role the same way the Government or other members of the conspiracy saw him. His conduct was part of his efforts to maintain stability and protect his family.

It is also important to understand that long before Tyler was ever arrested for the instant offense, he was heartbroken about the loss of his friend S.B. Tyler and S.B. were close friends for many years. Tyler was also aware of S.B.'s struggle with addiction and he supported her in her treatment efforts. When she left treatment prematurely, Tyler repeatedly and vehemently warned other members of the conspiracy not to serve her with fentanyl. Notwithstanding the fact that he

did not serve her directly and tried to prevent others who did, he acknowledges that he served the location where S.B. obtained her drugs that ultimately ended her life.

Tyler was also well aware of the prostitution activities that took place within the conspiracy and the fact that many women fed their addiction through sex acts. Tyler did not see himself as a participant in this conduct because, unlike other members of the conspiracy, he did not have sex with women in exchange for drugs and did not participate in the advertising for dates or sex acts. He purchased food and clothing for addicts because he knew what it was like to be homeless and sick from withdrawal. He did not see that his involvement in the conspiracy coupled with the physiological impact of withdrawal was a key component to the coercive nature of the sex trafficking conspiracy. In fact, he always viewed himself as a fair person who was good to people who were good to him.

Regardless of the fact that the parties have engaged in lengthy and spirited disagreements about Tyler's intentions and role in the conspiracy, it is unlikely that parsing out further details of the specific disputed events will provide any further clarity. What is important is what Tyler does from here. Given the lengthy prison sentence he faces, he will have more than enough time to engage in treatment and make positive changes before he returns to the community.

### b. **History and Characteristics**

Studies have universally shown that the most successful children have the benefit of good role models, family structure, and safe and stable housing. These are the basic things all children require and deserve. In contrast, both of Tyler's biological parents chose drugs over caring for, protecting or even spending time with their child. Throughout his childhood, he was consistently exposed to violence, drugs and severe abuse, homelessness and hunger. This prolonged, severe abuse and childhood torture was documented in records and confirmed by Tyler's mother. While

he did occasionally receive glimpses of unconditional love and some stability from family members when they were able to provide it, the parental rejection, betrayal and abuse by his parents and other supervising adults deeply wounded him and continues to haunt him to this day.

Remarkably, Tyler's approach to his own children is much different. Even though he has been detained for over two years and eight months, he maintains close and constant contact with his mother and daughter. His commitment to them is palpable. As demonstrated by the numerous character letters from friends and family members, Tyler's upbringing has not impaired his ability to love and care for others. His greatest regret and biggest concern is that he will lose his mother while he is still incarcerated. In addition, by the time he is released, his children will be adults with their own lives. He fears he will be alone and have nothing.

    **c. The Need to Provide the Defendant with Needed Education or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner.**

Tyler has been detained at CCNO since June 2022. More recently, he was transported to NEOCC in Youngstown, Ohio. While at CCNO, he has done his best to better himself and demonstrate substantive post-offense rehabilitation by taking every class or program available to him. He has compiled over a dozen certificates of completion after successfully completing classes that address substance abuse and mental health, develop vocational skills, and encourage positive leadership and workplace skills. Tyler has also been open about his desire to engage in mental health treatment and continue to address his lengthy and unhealthy relationship with alcohol and narcotics. He is also looking forward to developing vocational skills that can ensure a successful transition back into the community. Because of his diagnosed PTSD and major depressive disorder and substance abuse disorder, he would also benefit from psychotherapy and substance abuse treatment.

   **d. Just Punishment, Adequate Deterrence, Protection of the Public, and Provision
      of Services / The Need to Avoid Unwarranted Sentencing Disparities**

The parties agree that the binding plea agreement contemplates a significant sentence for a serious offense and takes into account all of the relevant sentencing factors. Accordingly, even if Tyler were to be sentenced at the bottom of the sentencing range, he would still have to serve a very significant additional period of time in prison, followed by a term of supervised release. For these reasons, Tyler respectfully requests that this Court accept the binding plea agreement.

**V.       CONCLUSION**

In light of all of the aforementioned factors, Defendant Tyler Bourdo respectfully requests a mitigating sentence that focuses on intensive supervision, counseling, and treatment. He further submits that a sentence at the bottom of the stipulated range, 240 months would be sufficient, but not greater than necessary, to accomplish the goals of sentencing codified in 18 U.S.C. §3553(a)(2).

Respectfully submitted,


  /s/  Rasheeda Z. Khan
Rasheeda Z. Khan (0075054)
Peterson Conners LLP
545 Metro Place South, Suite 435
Dublin, Ohio  43017
(614) 745-8849 Phone
(614) 220-0197 Fax
rkhan@petersonconners.com

  /s/  Todd Aaron Long
Todd Aaron Long (0082296)
Eastman Smith, Ltd.
250 Civic Center Drive, Suite 280
Columbus, Ohio 43215
(614) 564-1443 Phone
(614) 280-1777 Fax
talong@eastmansmith.com

*Attorneys for Defendant Tyler Bourdo*


**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Sentencing Memorandum was electronically served upon Timothy Prichard, Assistant United States Attorney, Office of the United States Attorney, Suite 200, 85 Marconi Boulevard, Columbus, Ohio 43215; on this 21st day of February 2025.

  /s/  Rasheeda Z. Khan
Rasheeda Z. Khan

9